UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

MARGARITO MARTINEZ V.,[1]  ) NO. CV 20-5675-KS
   Plaintiff, )
  v. )
           ) MEMORANDUM OPINION AND ORDER
ANDREW SAUL, Commissioner )
of Social Security, )
   Defendant. )
_____ )

# INTRODUCTION

  Margarito Martinez V. ("Plaintiff") filed a Complaint on June 25, 2020, seeking review of the denial of his application for a period of disability and disability insurance ("DI"). On July 24, 2020, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 12, 13.) On May 4, 2020, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 21.) Plaintiff seeks an order reversing the Commissioner's decision and remanding for further proceedings including, but not limited to, the taking of vocational expert testimony. (Joint Stip. at 9.) The Commissioner requests

---

[1]  Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*See id*.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

In June 2017, Plaintiff, who was born on February 22, 1957, filed applications for a period of disability and DI.[2] (*See* Joint Stip. at 2; Administrative Record ("AR") 21, 169.) Plaintiff alleged disability commencing March 24, 2013 due to: "severe joint pains; heart condition; diabetes; [and] blood pressure." (AR 206.) Plaintiff subsequently amended his application to request a closed period of disability ending on June 1, 2018. (AR 21, 38; (Joint Stip. at 2 n. 1.) Plaintiff previously worked as a parking lot attendant (DOT 915.473-010). (AR 27, 49-50, 194.) The Commissioner denied Plaintiff's applications initially (AR 54-66), and Plaintiff then requested an administrative hearing (AR 99). On April 19, 2019, Administrative Law Judge Michael D. Radensky (the "ALJ") held a hearing at which Plaintiff, who was represented by counsel, testified as did vocational expert Ronald Hatakeyama (the "VE"). (AR 32-52.) On May 22, 2019, the ALJ issued an unfavorable decision, denying Plaintiff's application. (AR 15-27.) On April 23, 2020, the Appeals Council denied Plaintiff's request for review. (AR 1-3.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2020. (AR 23.) The ALJ further found that Plaintiff had not engaged in substantial gainful activity between the alleged onset date of March 7, 2013 and June 1, 2018. (AR 23.) The ALJ determined that Plaintiff had the following severe

---

[2] Plaintiff was 56 years old on the alleged onset date and was thus defined as a person of advanced age under agency regulations. *See* 20 C.F.R. § 404.1563(e).

2

impairments: "degenerative disc disease of the cervical and lumbar spine; obesity; hypertension; and history of atrial fibrillation." (AR 23.) The ALJ also concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. (AR 24.) In reaching that conclusion, the ALJ noted that he had considered listings 1.04 and 4.05 but determined that there was insufficient evidence that Plaintiff met or medically equaled these listings. (AR 24.) The ALJ determined that, during the relevant period, Plaintiff had the residual functional capacity ("RFC") to perform light work[3] with the following additional limitations: "[Plaintiff] would be limited to occasional postural activities but not climbing ladders, scaffolds, or ropes. In addition, the claimant would be limited to occasional overhead work bilaterally and precluded from working around unprotected heights." (AR 24.)

The ALJ found that Plaintiff was able to perform his past relevant work as a parking lot attendant. (DOT 915.473-010). (AR 23.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, during the relevant period from the alleged onset date to June 1, 2018. (AR 27.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Ahearn v. Saul*, 988 F.3d 1111, 1115, 1116 (9th Cir. 2021); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," but less than a preponderance: it is "such relevant evidence as a reasonable mind might accept as adequate

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567

3

to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless "must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion." *Ahearn*, 988 F.3d at 1115; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Ahearn*, 988 F.3d at 1115 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Ahearn*, 988 F.3d at 1115-16; *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

**DISCUSSION**

According to the Joint Stipulation, there is only a single issue in dispute: whether the ALJ's residual functional capacity assessment is supported by substantial evidence in the administrative record. (Joint Stip. at 4.) More specifically, Plaintiff argues that the ALJ

4

improperly evaluated the opinion of Yuri Falkenstein, M.D., a Fellow with the American Academy of Orthopaedic Surgeons and the qualified medical examiner ("QME") who examined Plaintiff in connection with Plaintiff's workers' compensation claim (*see* Joint Stip. at 5-6), and, as a result, failed to pose a hypothetical to the VE that reflected all of Plaintiff's limitations supported by substantial evidence in the record (*see id.* at 6).

I.     **Applicable Law**

At step four of the sequential analysis, claimants bear the burden of showing that they can no longer perform their past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). Although the burden lies with the claimant, the ALJ must make specific findings regarding the plaintiff's residual functional capacity—that is, what he can still do despite his physical, mental, nonexertional, and other limitations. *See id.* at 845; *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001).

In determining a claimant's RFC, an ALJ is not required to recite verbatim the opinion of a credited medical source. *Jones v. Astrue*, No. 08-08562-MLG, 2009 WL 4110111, at *2 (C.D. Cal. Nov. 24, 2009); *see also Phillips v. Colvin*, 61 F. Supp.3d 925, 939-40 (N.D. Cal. 2014) (an assessment of moderate limitations does not have to be exactly mirrored in the RFC determination); *Little v. Comm'r of Social Sec.*, 780 F. Supp.2d 1143, 1152-54 (D. Or. 2011) (agreeing with the Commissioner that an ALJ does not necessarily reject a medical opinion simply because he does not adopt the opinion's findings verbatim). Instead, the RFC assessment is the ALJ's translation of the medical evidence, including the medical opinions provided by the treating, examining, and reviewing physicians included in the record. The Ninth Circuit previously required that, in order to reject the opinion of a treating or examining physician, the ALJ must provide "clear and convincing reasons . . . supported by substantial evidence" if the opinion is uncontradicted and "specific and legitimate reasons . . . supported by substantial evidence" if the opinion is contradicted by another medical opinion. *Trevizo v.*

*Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). However, the Commissioner revised the rules for disability applications filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017).

The new regulations provide that the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, medical opinions now are evaluated according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important of these factors are supportability[4] and consistency,[5] and the ALJ need only address the remaining factors when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b).

Because Plaintiff filed his DI application in June 2017, it is subject to the revised rules, and the Court must defer to the new regulations. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005); *see, e.g.*, *Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld unless 'they exceeded the Secretary's authority [or] are arbitrary and capricious.'").[6] Nevertheless, ALJs are still required to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. § 404.1520c(b). "The 'more relevant the objective medical evidence and

---

[4] Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1).
[5] Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. § 416.920c(c)(2), 416.902(j)(1).
[6] To date, the Ninth Circuit has not yet addressed whether or how the new regulations alter analysis of the adequacy of an ALJ's reasoning. *See Titus L. S. v. Saul*, No. 2:20-CV-04825-AFM, 2021 WL 275927, at *6 (C.D. Cal. Jan. 26, 2021) (citations omitted).

6

supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Robert S. v. Saul*, No. 3:19-CV-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021), report and recommendation adopted, No. 3:19-CV-01773-SB, 2021 WL 1206576 (D. Or. Mar. 29, 2021). In sum, the Commissioner must explain his or her reasoning, specifically address how he or she considered the supportability and consistency of the opinion, and the ALJ's reasoning must be free from legal error and supported by substantial evidence. *Titus L. S. v. Saul*, No. 2:20-CV-04825-AFM, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021); *see also Robert S. v. Saul*, No. 3:19-CV-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021) (citing Linda F. v. Saul, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020)), report and recommendation adopted, No. 3:19-CV-01773-SB, 2021 WL 1206576 (D. Or. Mar. 29, 2021).

## II.     Arguments of the Parties

Plaintiff contends that the ALJ erred in characterizing Dr. Falkenstein's opinion as consistent with the opinions of the consultative examiner, Dr. Benrazavi, and the state agency reviewing physicians, Drs. Amon and Pong. (Joint Stip. at 5.) Plaintiff states that, contrary to the ALJ's findings, Dr. Falkenstein's opinion was more restrictive because he determined that Plaintiff was precluded from repetitive motion of the neck as well as from prolonged weight bearing and repetitive or prolonged squatting, kneeling, and climbing. (*Id.*) Plaintiff states that the ALJ discounted some of these limitations without articulating *any* reasons, much less legally sufficient reasons, supported by substantial evidence in the record for doing so. (*See id.*)

Defendant presents the following arguments in rebuttal. First, Defendant contends that, to the extent that Dr. Falkenstein opined that Plaintiff should not engage in prolonged weightbearing, that opinion was at odds with his own examination and with the record as a whole and, therefore, entitled to little weight. (Joint Stip. at 7.) However, Defendant also

contends that, although the ALJ could rightly have discounted at least some of Dr. Falkenstein's opinion, the ALJ *did not* discount any portion of Dr. Falkenstein's opinion. (*Id.* at 7-8.) Defendant explains that the ALJ did not identify a portion of Dr. Falkenstein's opinion as deserving little weight, expressly found that Dr. Falkenstein's opinion was consistent with the other accepted evidence in the record, and, perhaps most significantly, determined that Dr. Falkenstein's assessed restrictions were consistent the agency's definition of "light work." (*Id.*) Third and finally, Defendant contends that, even if the ALJ did improperly evaluate Dr. Falkenstein's opinion and omit those restrictions from the RFC, the ALJ's error is harmless because the occupation that the ALJ found Plaintiff capable of performing (parking lot attendant) does not require prolonged weightbearing or repetitive neck motion. (*Id.* at 8.)

### III.  Medical Opinions

The Court begins its review of the Administrative Record with the medical opinions at issue. On September 29, 2014, Dr. Falkenstein conducted a physical examination of Plaintiff in connection with Plaintiff's workers' compensation claim. (AR 1084.) Dr. Falkenstein subsequently reviewed 1,059 pages of medical records, including October 2014 MRIs of Plaintiff's knees and October 2014 EMG-NCV studies of Plaintiff's upper extremities, and authored a Panel Qualified Medical Evaluation in connection with Plaintiff's workers' compensation claim. (AR 1088, 1100.) Dr. Falkenstein's physical examination revealed tenderness over Plaintiff's cervical paravertebrals and trapezius muscles bilaterally on palpation (AR 1091), tenderness over the trapezius, subacromial, and acromioclavicular articulation (AR 1092), and tenderness of the lumbar paravertebral muscles. Plaintiff experienced cervical trapezial pain while performing a shoulder depression test. (AR 1092.) An impingement test and Hawkins sign test were trace positive on Plaintiff's right and left sides. (AR 1092.) A Tinel's Wrist Carpal Tunnel test also yielded mildly positive results on Plaintiff's right and left side. (AR 1095.) A Kemp's test also yielded positive results bilaterally. (AR 1097.) Based on Dr. Falkenstein's examination and review, he opined that

Plaintiff's cervical spine impairments precluded Plaintiff from "repetitive motion of the neck," Plaintiff's lumbar spine impairments precluded Plaintiff from "very heavy work," and Plaintiff's bilateral knee impairments precluded Plaintiff from "prolonged weight bearing and repetitive or prolonged squatting, kneeling, and climbing." (AR 1136.)

On August 15, 2017, Soheila Benrazavi, MD, a board certified internist, conducted a physical examination of Plaintiff in connection with Plaintiff's claims for benefits and reviewed Plaintiff's records that were provided to her, including an x-ray, Holter monitor, and an EKG. (AR 645-49, 648.) Dr. Benrazavi stated that tenderness was noted on the biceps tendon of Plaintiff's right shoulder but range of motion was only slightly decreased and power was intact. (AR 648.) Dr. Benrazavi observed no other abnormal finding (AR 648-49), although she also conducted fewer tests than Dr. Falkenstein. (*Compare generally* AR 646-48 *with* AR 1091-97.) Dr. Benrazavi opined that Plaintiff retained the capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk six hours per eight hour workday, and sit for six hours per eight hour workday due to Plaintiff's shoulder tendonitis. (AR 649.)

Two weeks later, on August 29, 2017, state agency physician S. Amon, MD, a family or general practitioner (*see* AR 66 (identifying Dr. Amon's medical specialty code as "12")), reviewed the records made available to the agency and opined that Plaintiff retained the capacity to perform the following: occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk for a total of about six hours in an eight-hour workday; frequently climb ramps/stairs, balance, stoop, kneel, crouch, or crawl; and occasionally climb ladders/ropes/scaffolds. (AR 61-62.) On October 17, 2017, state agency physician D. Pong, another family or general practitioner, reviewed the records made available to the agency and reached the same conclusions as Dr. Amon. (AR 74-75.)

\\
\\

9

## IV. ALJ's Decision

The ALJ determined that Plaintiff could perform light work but with the following restrictions: Plaintiff would be limited to occasional postural activities and no climbing ladders, scaffolds, or ropes; he would be limited to occasional overhead work bilaterally; and he would be precluded from working around unprotected heights. (AR 24.) With regards to Dr. Falkenstein's opinion, the ALJ observed that Dr. Falkenstein had assessed the following restrictions: "no very heavy work, no repetitive motion of the neck and no prolonged weight bearing and repetitive or prolonged sitting, kneeling, and climbing." (AR 26.) The ALJ concluded that Dr. Falkenstein's opinions were "consistent with the opinion and the opinions of the consultative examiner and consultants," but he "nevertheless . . . allowed for additional limitations to 'light' work given the totality of [Plaintiff's] impairments." (AR 26.)

## V. Discussion

The ALJ observed that Dr. Falkenstein had assessed the following restrictions: "no very heavy work, no repetitive motion of the neck and no prolonged weight bearing and repetitive or prolonged sitting, kneeling, and climbing." (AR 26.) The ALJ stated that Dr. Falkenstein's opinion was "consistent with the opinion and the opinions of the consultative examiner and consultants." (AR 26.) However, the ALJ mischaracterized Dr. Falkenstein's opinion as being consistent with the other medical opinions.

As stated above, Dr. Benrazavi opined that Plaintiff retained the capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk six hours per eight hour workday, and sit for six hours per eight hour workday due to Plaintiff's shoulder tendonitis. (AR 649.) However, she assessed no restrictions on Plaintiff's ability to move his neck or engage in "repetitive" squatting, kneeling, or climbing. Similarly, the state agency consultants who reviewed Plaintiff's medical records also assessed no restrictions on

10

Plaintiff's ability to move his neck or engage in "repetitive" squatting and their opinions that Plaintiff could frequently kneel and lift and/or carry 25 pounds are at odds with Dr. Falkenstein's opinion that Plaintiff should not engage in repetitive kneeling. Accordingly, the ALJ's conclusion that Dr. Falkenstein's opinion is consistent with the other medical opinions is not supported by substantial evidence in the record. Further, although the ALJ did not acknowledge that he was omitting any of Dr. Falkenstein's restrictions from his assessment of Plaintiff's RFC, the ALJ in fact discounted Dr. Falkenstein's opinion that Plaintiff should not engage in repetitive motion of his neck, concluding instead that Plaintiff would only be limited to occasional postural activities and no climbing ladders, scaffolds, or ropes, occasional overhead work bilaterally, and no working around unprotected heights. (AR 24.)

### A. Defendant's Contention that Dr. Falkenstein's Restrictions Were Neither Consistent With, Nor Supported By, the Record

Defendant asks the Court to affirm the ALJ because one could conclude from the record that Dr. Falkenstein's assessed restriction on repetitive neck motion should be discounted because it was neither consistent with the record nor supported by the objective medical evidence. (*See* Joint Stip. at 7.) However, the Court can only assess the reasons provided by the ALJ and may not affirm the ALJ's decision based on Defendant's post-hoc rationalizations. *See Bennett v. Colvin*, 202 F. Supp.3d 1119, 1130 (9th Cir. 2016) ("these are post-hoc arguments not mentioned by the ALJ, and therefore cannot be considered by this Court") (citing *Connett*, 340 F.3d at 874 ("[i]t was error for the district court to affirm the – ALJ's credibility decision based on evidence that the ALJ did not discuss")); *see also Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking"). This is particularly true in this case where Plaintiff

also testified about experiencing neck and shoulder pain during the relevant period. (*See* AR 42.)

**B. Defendant's Contention that Dr. Falkenstein's Restrictions Are Addressed By the Restriction to "Light Work"**

Defendant next contends that the ALJ did not discount Dr. Falkenstein's assessed restriction on repetitive neck motion because that restriction is incorporated into the agency's definition of "light work." (*See* Joint Stip. at 7-8.) According to the Commissioner's regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.[7] Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567.

The Central District has generally determined that a preclusion on "prolonged weight-bearing" in the workers' compensation context equates to a preclusion on prolonged standing or walking—not a preclusion on standing and walking entirely—and, therefore is consistent with the definition of "light work." *See, e.g., George A. v. Berryhill*, No. 5:18-CV-00405-AFM, 2019 WL 1875523, at *3 (C.D. Cal. Apr. 24, 2019) ("a physician's opinion rendered in the workers' compensation context that a claimant is precluded from prolonged weight-bearing is not inconsistent with an RFC allowing for standing and/or walking for six-hours in an eight-hour day"); *see also Rivera v. Colvin*, NO. CV 14-09217-KS, 2016 WL 94231, at *4-5 (C.D. Cal. Jan. 7, 2016) ("[T]he Workers Compensation Schedule for Rating Permanent

---

[7] The Commissioner defines "frequent" as "occurring from one-third to two-thirds of the time." S.S.R. 83-10. Notably, the conclusion that a plaintiff can perform certain job tasks "frequently" is "not necessarily consistent" with a medical opinion that the plaintiff was restricted from performing those activities "repetitively." *Alvarado v. Comm'r of Soc. Sec.*, No. 8:17-CV-00566 (VEB), 2018 WL 4616344, at *5 (C.D. Cal. Sept. 24, 2018); *see also Kimberly Sue F. v. Andrew Saul*, No. 8:20-CV-01267-JDE, 2021 WL 1215791, at *6 (C.D. Cal. Mar. 31, 2021) ("the ALJ's definition of 'frequently' as 'occurring from one-third to two thirds of the time' appears to conflict with 'repetitive'").

12

Disabilities, indicates that a Disability Precluding Prolonged Weight-Bearing 'contemplates ability to do work approximately 75% of time in standing and walking position, and requires a sitting approximately 25% of time.'"); *Medel v. Colvin,* No. EDCV 13–2052–JPR, 2014 WL 6065898, at *6 (C.D. Cal. Nov. 13, 2014). However, the agency's definition of "light work" makes no mention of neck motion, and both the federal courts and other ALJs have consistently found that a limitation to light work does not necessarily include limitations on repetitive neck motion. *See, e.g., Dearman v. Berryhill*, No. 2:15-CV-01447-PAL, 2018 WL 4677769, at *10 (D. Nev. Sept. 28, 2018) (stating that the court could not determine whether the ALJ, who had concluded that the plaintiff could perform light work if she stopped substance abuse, had rejected the opinion that the plaintiff should not be required to do repetitive neck motion or long downward gazing); *Quiambao v. Berryhill*, No. 17-CV-02305-BAS-RBB, 2018 WL 3584462, at *4 (S.D. Cal. July 26, 2018) (ALJ included limitations on neck motion *in addition to* opining that the plaintiff was limited to light work); *Woodward v. Comm'r of Soc. Sec.*, No. 2:14-CV-0811-CMK, 2014 WL 5514189, at *1 (E.D. Cal. Oct. 31, 2014) (same); *Wolfinbarger v. Comm'r of Soc. Sec.,* No. 2:12-CV-0174-CMK, 2014 WL 788787, at *1 (E.D. Cal. Feb. 25, 2014) (same); *Cunningham v. Astrue*, No. CV 09-624-TUC-HCE, 2011 WL 1119646, at *3 (D. Ariz. Mar. 28, 2011) (same). In light of the foregoing, the Court accepts Defendant's contention that Dr. Falkenstein's restriction on prolonged weight-bearing is incorporated in the ALJ's restriction to "light work," but finds that Dr. Falkenstein's restriction on repetitive neck motion is not also incorporated in the restriction to "light work." Instead, the ALJ omitted, and, therefore, discounted, Dr. Falkenstein's assessment that Plaintiff cannot perform work requiring repetitive neck motion.

### C. Defendant's Contention that the ALJ's Error Was Harmless

Defendants' final argument is that the ALJ's error is harmless because the occupation that the ALJ found Plaintiff capable of performing (parking lot attendant) does not require

repetitive neck motion. (Joint Stip. at 8.) The Dictionary of Occupational Titles states that a parking lot attendant performs the following tasks:

> Parks automobiles for customers in parking lot or storage garage; Places numbered tag on windshield of automobile to be parked and hands customer similar tag to be used later in locating parked automobile. Records time and drives automobile to parking space, or points out parking space for customer's use. Patrols area to prevent thefts from parked automobiles. Collects parking fee from customer, based on charges for time automobile is parked. Takes numbered tag from customer, locates automobile, and surrenders it to customer, or directs customer to parked automobile. May service automobiles with gasoline, oil, and water.

DOT 915.473-010.

The ALJ is entitled to rely on the DOT's description of the requirements for each listed occupation and on VE testimony about those occupations. *Zavalin v. Colvin*, 778 F.3d 842, 845-46 (9th Cir. 2015); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001) (testimony of a VE constitutes substantial evidence). Here, however, the ALJ failed to ask the VE whether an individual precluded from repetitive neck motion could perform the occupation of parking lot attendant. (*See generally* AR 50-52.) Accordingly, the Court cannot say that the ALJ's deficient evaluation of Dr. Falkenstein's opinion was inconsequential to the ultimate nondisability determination. *See Brown-Hunter*, 806 F.3d at 492. Therefore, the matter must be remanded.

\\
\\
\\
\\

## VI. Remand for Further Proceedings Is Warranted.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). A district court may remand for an award of benefits when the following three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. The third of these conditions "incorporates . . . a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a determination of disability can be made." *Id.* at 1020, n.26. However, even if those three requirements are met, the Court retains "flexibility" in determining the appropriate remedy and may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

In this case, the Court cannot say that further administrative proceedings would serve no useful purpose and, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand. *See Garrison*, 759 F.3d at 1020. This case, then, is not the "rare exception" in which the credit as true rule should be applied and the matter remanded for the calculation and award of benefits. *See Leon v. Berryhill*, 874 F.3d 1130, 1133 (9th Cir. 2017). Therefore, the Court remands for further consideration. On remand, the ALJ shall: determine whether to credit or discount Dr. Falkenstein's opinion, in whole or in part; make findings about the supportability and consistency of Dr. Falkenstein's opinion that are supported by substantial evidence in the record; and pose a complete

hypothetical, encompassing all of the functional restrictions supported by substantial evidence, to the VE.

**CONCLUSION**

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED to the Commissioner for further proceedings consistent with this memorandum of decision.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: May 14, 2021

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE